In the Matter of the Estate of ANDREW SAKS, Deceased.

Surrogate's Court, New York County, January 14, 1939.

*Proskauer, Rose & Paskus [George F. Kurzman* and *Charles Looker* of counsell, for the petitioners.

*Leon Lauterstein [Milton Winn* of counsel], for the executors, etc., of Horace A. Saks and William Andrew Saks.

*Levy & Molloy [George B. Levy* of counsell, for Leonard C. Lee.

*Gabriel L. Kaplan,* special guardian.

*Riegelman, Hess, Strasser & Hirsch [Morton H. Hess* of counsel], for the respondents Carol Saks, Andrew Saks, Edna J. Saks, John A. Saks and Jane Meyer Stern.

*Hollander & Bernheimer,* for Leila S. Ranger.

FOLEY, S.   A construction of the will is necessary in this trustees' accounting.   On March 22, 1911, the testator executed a will which provided for the creation of a trust of the residuary estate for the benefit of his widow for life.   Upon the death of the widow the will directed a division of the residuary estate equally among the testator's children and issue of deceased children then living partly outright and partly in trust.   About two months after the execution of this will the testator's daughter Edna died.   She was survived by her husband and her son, Leonard C. Levy, Jr.   Within a few weeks of his daughter's death the testator executed a codicil which provides in part as follows: " My beloved daughter Edna having just departed this life, it is my wish and desire to safeguard and protect, so far as lies in my power, the interests and welfare of her husband and child, my beloved grandson, by a more detailed disposition of that portion of my said estate set apart for the benefit of my daughter Edna and her family by my Will than is therein provided."   The codicil then gave to the trustees " any money or funds  *  *  *  to which, if my beloved daughter survived me, she, her issue,  *  *  *  would at any time have been entitled under my said last will and testament."   Two-thirds of this

amount was to be held in trust for the benefit of the son of the deceased daughter with periodic payments of principal to him upon attaining specified ages. On his death the codicil provides that the remainder shall pass to his appointees and in default of the exercise of the power to his issue. No question has arisen as to the validity of this trust created by the codicil of the two-thirds of the fund devoted to the daughter in the will.

Under the terms of the codicil the remaining one-third of the daughter's share is to be held in trust during the life of her husband and on the death of the husband the principal is to be added to the prior trust of two-thirds of the fund created for the benefit of the grandson. This one-third of the fund to be held in trust for the life of the husband of the daughter is also subject to periodic payments from principal to the grandson upon his attaining specified ages.

It is obvious that if the provisions of the codicil as to one-third of the deceased daughter's fund are to be given effect, the power of alienation would be suspended during three lives.

The testator died in 1912, the husband of the deceased daughter died in 1930, and the testator's widow died in 1938. Leonard C. Levy, Jr., the son of the predeceased daughter, is now living and has one child. At the death of the testator's widow, Leonard C. Levy, Jr., had already attained the ages at which portions of the principal of the secondary trust were to be paid to him.

The effect of the invalidity in the codicil on the valid provisions of the will and the distribution of the residuary estate must now be determined. In considering this question the will and codicil must be read together as parts of the same instrument.

The rule is well settled that the provisions of a will should not be disturbed further than is necessary to give effect to the codicil. (*Herzog* v. *Title Guarantee & Trust Co.*, 177 N. Y. 86; *Goodwin* v. *Coddington*, 154 id. 283; *Hard* v. *Ashley*, 117 id. 606; *Matter of Mitchell*, 152 Misc. 228.) It is to be noted that the codicil here makes no express revocation of the valid gifts in the will to the testator's daughter and her issue. If these provisions are to be deemed revoked they must be revoked by the inconsistent or repugnant provisions contained in the codicil. The question is, therefore, presented as to whether or not, in the absence of direct words of revocation, the invalid provisions in the codicil effect a *pro tanto* revocation of the valid gifts in the will to the testator's daughter and her issue.

A similar question was carefully considered by the Court of Appeals in *Austin* v. *Oakes* (117 N. Y. 577). In that case the testator's widow was given power to appoint the remainder among

a limited class of persons. The widow executed a will in which she expressly recited the power and made a valid exercise thereof. One of the persons to whom she appointed, and who was within the permitted class, died during the life of the widow. She thereupon executed a codicil in which she attempted to give the share of the deceased appointee to persons not within the permitted class. In holding that the invalid appointment in the codicil did not revoke the prior valid appointment in the will, Judge FINCH asked the rhetorical question (p. 597), " can nothing be repugnant to something and turn that something into nothing? " Again (at p. 598) Judge FINCH stated, " A revocation of an earlier disposition of a will by a later one, or by a codicil, on the ground of repugnancy, is never anything but a rule of necessity, and operates only so far as is requisite to give the latter provision effect."

In *Smith* v. *Chesebrough* (176 N. Y. 317) the testator created a trust for the benefit of his wife for life and upon her death the remainder was given to the trustees of a charitable trust. After the death of his wife the testator executed a codicil in which he revoked the provisions for the benefit of his wife and then made a direction that the executor was to hold the residuary estate for two years after his death and then turn it over to the trustees of the charitable trust. These latter provisions of the codicil suspended the power of alienation beyond the statutory period and were held to be invalid. The court held that the valid gift in the will to the charitable trustees is not revoked by the invalid provisions in the codicil. Judge WERNER stated (p. 323), " by expunging the invalid part of the codicil the testator's partial intestacy is avoided and the real substance of his will is effectuated in its entirety."

A similar holding was made by Judge PARKER, later Chief Judge of the Court of Appeals, in *Altrock* v. *Vandenburgh* (25 N. Y. Supp. 851, not officially reported). In that case the testator had made a devise of real property to his son and his son's children subject to an annuity to his widow for life. After the death of the son, the testator made a codicil reciting the son's death and creating three successive life estates for the children of the son in the real property. In commenting upon the provisions of the codicil (p. 852) Judge PARKER stated, " now, if this attempted devise was valid, it would operate as a revocation of the will in such respect, because inconsistent with it, and expressly intended to take the place of it. But it is not valid, and it would be strange, indeed, if a wholly inoperative attempted disposition should nevertheless have the effect of destroying a prior valid devise."

The Court of Appeals again decided in *Herzog* v. *Title Guarantee & Trust Co.* (177 N. Y. 86) that invalid provisions of the codicil did not revoke the prior valid gifts of the will. A similar holding was made in *Matter of Pilsbury* (50 Misc. 367; affd., on opinion below, 113 App. Div. 893; affd., 186 N. Y. 545).

Applying the rule established by the above cited cases, I hold that the invalid trust provisions contained in the codicil cannot act as a revocation of the valid gift in the will to the testator's grandson of one-third of the share originally devoted to the deceased daughter of the testator.

This determination is in harmony with the obvious intention of the testator to preserve the equality in the distribution of his estate among his children and their descendants and is also in accord with the rule that intestacy should be avoided wherever possible.

Other contentions might be made based on the language of the will and codicil under which it might be successfully argued that Leonard C. Levy, Jr., is entitled to all, or at least part, of the fund attempted to be set aside in an invalid trust by the codicil. In view of my decision it is unnecessary to comment upon these arguments other than to say that the testator has clearly indicated his intention that his grandson should receive the principal or income from the whole fund originally set aside for the benefit of his deceased daughter.

Submit decree on notice construing the will accordingly.