[Civ. No. 52985. Second Dist., Div. Five. Apr. 11, 1979.]

Estate of HENRIETTA M. JOHNSON, Deceased.
BRUCE FRASER et al., Petitioners and Appellants, v.
FORREST L. JOHNSON et al., Claimants and Respondents.

## COUNSEL

Turner, Smart & Frydrych, George M. Turner, Jack A. Frydrych and J. Michael Webster for Petitioners and Appellants.

McDonald, Harmon & Granieri and Peter Wisner for Claimants and Respondents.

## OPINION

**STEPHENS, J.**—This is an appeal taken from an order determining interests in an estate and directing the distribution of the property of the estate taken pursuant to Probate Code section 1240. At issue is the correctness of the trial court's construing together two testamentary instruments admitted to probate as the last will of Henrietta M. Johnson and the court's consequent determination that the appellants are not pretermitted heirs.

### STATEMENT OF FACTS

Respondents, Gerald K. Johnson and Forrest L. Johnson, are the sons of Henrietta May Johnson, the decedent in this case. Henrietta Johnson had a third child, Helen J. Fraser, who predeceased her. Appellants Bruce Fraser and Kenneth Fraser, the children of Helen J. Fraser, are the grandchildren of the decedent.

Children's Hospital of Los Angeles is no longer involved in this matter, the parties having stipulated to the bequest to the hospital.

Henrietta Johnson died on March 19, 1976, leaving two testamentary instruments and an estate of real and personal property valued in excess of $250,000.

On February 20, 1969, the decedent executed a typewritten will that had been prepared by an attorney, Mr. C. M. Linton. The will reads as follows:

"LAST WILL AND TESTAMENT

OF

HENRIETTA M. JOHNSON

"I, HENRIETTA M. JOHNSON, presently residing at 342 South Madison, Pasadena, California, declare this to be my Last Will and Testament, and I hereby revoke all former Wills and Codicils thereto made by me at any time.

"FIRST

"I declare that I am divorced from my former husband, Egbert G. Johnson, and that I have two living children, my sons, GERALD K. JOHNSON, who resides with me, and FORREST L. JOHNSON, c/o 1127 Wilshire Boulevard, Los Angeles, California. I declare that my only other child, Helen J. Fraser, is deceased.

"SECOND

"I direct my Executors, hereinafter named, to pay all of my just debts, expenses of last illness and funeral expenses as soon after my death as may be convenient.

"THIRD

"I bequeath the sum of Ten Thousand Dollars ($10,000.00) to CHILDREN'S HOSPITAL OF LOS ANGELES, 4650 West Sunset Boulevard, Los Angeles, California, and desire that the same be added to the 'Helen Johnson Memorial Fund', created in memory of my deceased daughter.

"FOURTH

"I devise and bequeath the residue of my estate, of whatever kind and wherever located, including property over which I have the power of appointment or direction, as follows:

"(A) One-half (½) thereof to my son, GERALD K. JOHNSON, and if he has predeceased me, then in accordance with subparagraph (B) hereafter.

"(B) One-half (½) of said residue, or the whole thereof, if my son, GERALD K. JOHNSON, has predeceased me, to my son, FORREST L. JOHNSON, and if he has predeceased me, to his descendants upon the principle of representation.

### "FIFTH

"Except as otherwise provided in this Will, I have intentionally and with full knowledge omitted to provide for my heirs who may be living at the time of my death.

"I specifically make no provision for the issue of my deceased daughter, Helen J. Fraser.

### "SIXTH

"I hereby appoint my sons, GERALD K. JOHNSON and FORREST L. JOHNSON, as Co-Executors of this Will, or the survivor of them as sole Executor, to serve without bond, and if neither of them survives my death, or is unable to act or continue to act in such capacity, then I appoint C. M. LINTON as Executor of this Will, likewise to serve without bond. In the further event that the said C. M. Linton is unable to act or continue to act in such capacity, then I appoint FIRST WESTERN BANK AND TRUST COMPANY, a California corporation, as Executor of this Will.

"I authorize my Executor to sell, encumber or lease property of my estate, subject to such order of court as may be required by law, and to hold, manage and operate any business belonging to my estate at the risk of my estate.

"IN WITNESS WHEREOF, I have hereunto set my hand this 20 day of Feb., 1969.

*"Henrietta M. Johnson*
"HENRIETTA M. JOHNSON

"THE FOREGOING INSTRUMENT, consisting of three (3) pages, including this page on which the witnesses have signed, was at the date thereof by the said HENRIETTA M. JOHNSON signed, sealed, published and declared to be her Last Will and Testament, in the presence of us, who, at her

request and in her presence and in the presence of each other, have signed the same as witnesses thereto.

"*C. M. Linton* Residing at *1425 El Mirador Dr.*
"*Pasadena, Calif.*
"*Georgiana Legacy* Residing at *110 S. Michigan*
"*Pasadena, Calif.*"

On March 23, 1972, decedent executed a holographic will. This will reads as follows:

"WILL

"Henrietta M. Johnson, M.D.
342 South Madison Avenue
Pasadena, California
Sycamore 3-2448

"Mar 23-72

"I, Henrietta M. Johnson declare this to be my last will & testament—I direct that my entire estate be divided/equally between my two sons Forrest Lionel Johnson and Gerald Kenneth Johnson. If one son is deceased the entire estate is to go to the Survivor—

"I direct Forrest and Gerald Johnson be appointed for my estate to act without bond—

"Henrietta M. Johnson."

No question is raised as to the validity of these instruments which were both admitted to probate.

The trial court found that decedent's only heirs were her sons, respondents, and two grandchildren, appellants.

The trial court held that the 1972 will was not wholly inconsistent with and thus did not revoke the earlier will; construed the two instruments together to ascertain the intent of the testatrix; found that the testatrix intended to disinherit her grandchildren and to leave her estate to her two sons; held that by the terms of the two instruments, the grandchildren were not pretermitted heirs and thus are not entitled to share in the estate; and ordered that the estate be divided equally between the two sons, less the $10,000 bequest to the hospital.

## DISCUSSION

Appellants' first contention on appeal is that the trial court erred in holding that the subsequent will did not revoke the prior will and in reading the two wills together. Appellants claim that the holographic will revoked the prior will either because it made a complete disposition of the property or because it is wholly inconsistent with the prior will. They also claim that there is an "implicit revocation" of the first will simply where the second will makes a complete disposition of the decedent's estate. Appellants cite *Estate of Martin* (1939) 31 Cal.App.2d 501, 506 [88 P.2d 234], for the proposition that "[i]t is the law of California that if the later writing purports to make disposition of all of decedent's property, the earlier instrument is deemed to be wholly revoked." The court, in *Estate of Martin, supra,* relies on four cases: *Estate of Siemers* (1927) 202 Cal. 424 [261 P. 298], *Estate of Bassett* (1925) 196 Cal. 576 [238 P. 666], *Estate of Marx* (1917) 174 Cal. 762 [164 P. 640], and *Estate of Scott* (1903) 141 Cal. 485 [75 P. 44], for the above proposition. In each of the five cases the courts examined the multiple instruments in terms of the wholly inconsistent factor. These decisions did not base their holdings solely on whether a complete disposition of the estate was made by the subsequent will. ■ The fact that the second will provides a complete disposition of the testator's property may be an important consideration, but is not necessarily controlling. (*Estate of Shute* (1942) 55 Cal.App.2d 573 [131 P.2d 54].)

In support of their contentions that the subsequent will revoked the prior will, appellants also claim that the two wills are wholly inconsistent. ■ A subsequent will has the power to revoke a prior will only by statute, specifically, Probate Code sections 72, 73 and 74. (*Estate of Callahan* (1965) 237 Cal.App.2d 818 [47 Cal.Rptr. 220].) Revocation by a subsequent will is defined by Probate Code section 72, which states: "A prior will is not revoked by a subsequent will, unless the latter contains an express revocation, or provisions wholly inconsistent with the terms of the prior will. In other cases the prior will remains effectual so far as consistent with the provisions of the subsequent will; but the mere naming of an executor in the prior will need not be given effect by the court when the subsequent will is otherwise wholly inconsistent with the terms of the prior will, the intention of the testator in this respect being left to the determination of the court."

■ The subsequent will in this case omits the $10,000 bequest to the hospital and provides that if Forrest L. Johnson predeceases the testatrix,

his half of the residue is to go to Gerald K. Johnson rather than to Forrest L. Johnson's descendants. These inconsistencies are minor.

■  The intent of the testator is the paramount rule of construction in interpreting wills. (*Estate of Danford* (1925) 196 Cal. 339 [238 P. 76]; Prob. Code, § 101.)  ■  In both wills here, the testatrix expressed her intention to give her estate to her two sons. A second rule of construction requires that where there is doubt " '. . . the courts incline to preserve the contents of the prior will, wholly or in part, rather than declare a total revocation by inference.' " (*Estate of Shute, supra,* 55 Cal.App.2d 573, 578-579, quoting from *Estate of Iburg* (1925) 196 Cal. 333, 334 [238 P. 74].)

■  The record contains no extrinsic evidence. Under such circumstances, the trial court's interpretation stands "unless it is erroneous, *i.e.,* not as tenable as our interpretation." (*Estate of Newmark* (1977) 67 Cal.App.3d 350, 360 [136 Cal.Rptr. 628].)  ■  We agree with the trial court that as a matter of law the subsequent will is not wholly inconsistent with and does not revoke the prior will.

The second claimed error was the trial court's failure to recognize that the subsequent will must control the distribution of the estate because it is the last will.

Appellants cite *Estate of Shute, supra,* and *Estate of Benson* (1944) 62 Cal.App.2d 866 [145 P.2d 668], for this last in time method of interpreting wills. In *Estate of Shute,* the testatrix left two wills. She destroyed the second one with the intent to revoke. The court looked to the prior will and deemed it the last will, since the subsequent will was revoked, and admitted it to probate in order to avoid intestacy.

In *Estate of Benson, supra,* the decedent left three testamentary instruments. In January of 1938 he executed a will in which he gave all his property to his sister, and, in the event of her death, to her children, and appointed "Anderson" as executor. In July 1938 he executed a codicil, substituting "Ferguson" for "Anderson" as executor. In December 1940 he executed another will or codicil revoking the July 1938 codicil in which he gave his estate to the four children of his deceased sister and two other individuals and appointed "Moody" as executor. The court admitted the subsequent will to probate and determined that the prior will was void. In reaching this decision, the court did mention the fact that the December 1940 will was the "last will," citing *Estate of Shute, supra,* 55 Cal.App.2d 573, but this was in addition to the finding that "the

provisions of the subsequent will [were] 'wholly inconsistent' with the former will." (*Estate of Benson, supra,* 62 Cal.App.2d 866, 871.)

■ We are not persuaded that the fact that a will is last in time in itself is a sufficient basis for determining the distribution of an estate. The dates of the instruments in themselves may be a factor, particularly where there is a possibility of intestacy occurring, but the governing factor is the intent of the testator. (*Estate of Danford* (1925) 196 Cal. 339 [238 P. 76].)

The third claimed error was the construing of the two wills together because (1) there is no reason to infer from the face of the instruments that such was the intent of the testator, or (2) the subsequent will is complete in itself.

Appellants argue that the court cannot infer that the testatrix intended that the two instruments be read together unless there is some pattern, form or cohesiveness to the instruments. Appellants rely on *Estate of Phippen* (1965) 238 Cal.App.2d 241 [47 Cal.Rptr. 648], and *Estate of Fritz* (1951) 102 Cal.App.2d 385 [227 P.2d 539], for this proposition. In *Estate of Phippen,* 17 handwritten sheets of notebook and binder paper itemizing decedent's property were before the court. The courts in *Phippen* and *Fritz* were dealing with the integration of documents to effectuate the decedent's testamentary purpose.

Before us are two separate testamentary instruments both titled "Will." In the absence of a revocation, the interpretation of the instruments is governed by Probate Code section 101 which states: "Several testamentary instruments executed by the same testator are to be taken and construed together as one instrument. A will is to be construed according to the intention of the testator. Where his intention can not have effect to its full extent, it must have effect as far as possible."

Appellants claim that the two instruments should not be read together because the subsequent will is complete in itself. ■ The general rule of Probate Code section 101 is that two testamentary instruments are to be construed as one instrument unless the subsequent will is wholly inconsistent, in which case under Probate Code section 72 cited above the prior will is revoked. As discussed above, the wills are not wholly inconsistent and accordingly the trial court was correct in reading the two wills together.

Appellants advanced the preceding contentions in order to have the subsequent holographic will determined as the testatrix' sole will to

govern distribution of the estate. If we had agreed with appellant's arguments, appellants would be pretermitted heirs under Probate Code section 90, which states: "When a testator omits to provide in his will for any of his children, or for the issue of any deceased child, whether born before or after the making of the will or before or after the death of the testator, and such child or issue are unprovided for by any settlement, and have not had an equal proportion of the testator's property bestowed on them by way of advancement, unless it appears from the will that such omission was intentional, such child or such issue succeeds to the same share in the estate of the testator as if he had died intestate."

Construing the instruments together, appellants were intentionally omitted by the fifth provision of the 1969 will and consequently are not pretermitted heirs entitled to share in the estate.

Affirmed.

Kaus, P. J., and Hastings, J., concurred.